IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:22-cv-00230-MR

| | |
|---|---|
| MARK A. JOHNSON, ) ) Plaintiff, ) ) vs. ) ) THE DONATION FUNNEL PROJECT, ) INC., ) ) Defendant. ) ) | **ORDER AND ENTRY OF DEFAULT JUDGMENT** |

**THIS MATTER** is before the Court on Plaintiff's Motion for Default Judgment [Doc. 8].

**I.  PROCEDURAL AND FACTUAL BACKGROUND**

On October 26, 2022, Mark A. Johnson ("Plaintiff") filed a complaint against The Donation Funnel Project, Inc. ("Defendant"), asserting a claim of copyright infringement. [Doc. 1 at 6]. Plaintiff is a photographer "specializing in outdoor and adventure photography" who places his photographic work online for customers to buy and license. [See doc. 8-2 at 1].

Plaintiff alleges that Defendant willfully infringed the copyright of a photograph he created by copying, reproducing, and publicly displaying the

photo without Plaintiff's consent. [Doc. 1 at 1, 5]. Plaintiff further alleges that Defendant continuously displayed his photo on its website for advertising purposes from March 12, 2020, until at least January 14, 2022, that Plaintiff was unaware of this usage, that Defendant never had permission to use the photo for any purpose, that Plaintiff made several written demands on Defendant to no avail prior to bringing suit, and that Plaintiff has in no way been compensated by Defendant for its unauthorized usage. [Id. at 2–4]. As a result of this alleged infringement, Plaintiff seeks damages under the federal Copyright Act, 17 U.S.C. § 101, et seq. [Doc. 1 at 1]. Specifically, Plaintiff seeks a permanent injunction "enjoining Defendant . . . from further infringement of all copyrighted works of the Plaintiff pursuant to 17 U.S.C. § 502[,]" actual or statutory damages, "reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505[,]" and pre- and post-judgment interest. [Doc. 1 at 6].

Defendant was served on October 31, 2022, and Plaintiff filed an affidavit of service with this Court on December 7, 2022. [Doc. 4 at 1]. On December 7, 2022, Plaintiff also moved for Entry of Default against Defendant for failing to plead or otherwise defend this action. [Doc. 5]. On December 8, 2022, the Clerk entered a default against Defendant. [Doc. 6]. On April 17, 2023, this Court entered an Order instructing Plaintiff to file

2

an appropriate motion or otherwise take further action with respect to Defendant. [Doc. 7]. On April 28, 2023, Plaintiff filed the present motion at issue, the Motion for Default Judgment [Doc. 8], seeking a permanent injunction, $50,000 in statutory damages, $419.95 in costs, and $2,625 in attorneys' fees.[1] [Doc. 8-1 at 8–9, 11].

## II. STANDARD OF REVIEW

"To obtain a default judgment, a party must first seek an entry of default under Federal Rule of Civil Procedure 55(a)." Hayhurst v. Liberty Int'l Underwriters, No. 5:08-cv-5347, 2009 U.S. Dist. LEXIS 5347, at *2 (N.D.W. Va. Jan. 29, 2009); see Eagle Fire, Inc. v. Eagle Integrated Controls, Inc., No. 3:06-cv-264, 2006 WL 1720681, at *5 (E.D. Va. June 20, 2006) ("The entry of default is a procedural prerequisite to the entry of a default judgment."). Rule 55(a) states that the clerk must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."

After the clerk enters default, the party may seek a default judgment under Rule 55(b)(1) or (2), depending on the nature of the relief sought.

---

[1] While Plaintiff sought an award of pre- and post-judgment interest in his Complaint, his Motion for Entry of Default Judgment omits any such request. As such, this Court does not consider awarding Plaintiff pre- and post-judgment interest.

3

Rule 55(b) "authorizes the entry of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982). By such a default, a defendant admits the well-pleaded factual allegations in the plaintiff's complaint. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001).

### III. DISCUSSION

#### A. Liability for Copyright Infringement

To establish liability for copyright infringement, Plaintiff must prove two things: (1) his ownership of the copyright at issue; and (2) that Defendant copied the protected work. See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).

First, as Plaintiff notes, "[a] certificate of registration issued by the Copyright Office is 'prima facie evidence of the validity of the copyright and of the facts stated in the certificate,' such as ownership." Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc, 618 F.3d 417, 428 (4th Cir. 2010), as amended (Aug. 24, 2010) (citing 17 U.S.C. § 410(c)). Here, Plaintiff asserts in his Complaint that his photo is covered by such a registration, and he attaches a copy of the registration certificate, which demonstrates ownership. [Doc. 1 at 5; Doc. 1-2]. By virtue of Defendant's

4

default, this Court takes as true the well-pleaded allegation in Plaintiff's complaint that he owns a valid copyright in the photograph at issue. Second, Plaintiff further asserts in his Complaint that "Defendant published, reproduced, and publicly displayed identical copies of the Copyrighted Work by displaying the Copyrighted Work on its website[.]" [Doc. 1 at 3]. This allegation, taken as true because of Defendant's default, is sufficient to establish that Defendant copied Plaintiff's photo.

Having pled both elements of copyright infringement, Plaintiff has established Defendant's liability and the Court turns to his requested relief.

## B. Statutory Damages

The Copyright Act provides that a plaintiff may seek statutory damages not less than $750 or more than $30,000 in an amount the Court deems just. See 17 U.S.C. § 504(c)(1). District courts hold "wide discretion" in setting the amount of statutory damages under the Copyright Act. 17 U.S.C. § 504(c). Although the Fourth Circuit has not specifically described how the statutory damages should be determined, this Court has relied upon guidance issued by the Second Circuit regarding factors to be considered, as follows:

> (1) the infringer's state of mind;
> (2) the expenses saved, and profits earned, by the infringer;
> (3) the revenue lost by the copyright holder;

5

(4) the deterrent effect on the infringer and third parties;
(5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and
(6) the conduct and attitude of the parties.

Oppenheimer v. Holt, No. 1:14-cv-000208-MR-DLH, 2015 WL 2062189, at *2 (W.D.N.C. May 4, 2015) (citing Bryant v. Media Right Prods., Inc., 603 F.3d 135, 144 (2d Cir. 2010)).

Under the first Bryant factor, the Plaintiff does not present in his Complaint [Doc. 1] any allegations regarding Defendant's state of mind, other than the conclusory allegation that "[u]pon information and belief, Defendant was aware that it was not authorized to use the Copyrighted work" and the equally conclusory assertion that "Defendant's post-notification conduct further demonstrates that Defendant acted willfully in infringing on Plaintiff's copyright." However, the only relevant fact that Plaintiff established by virtue of Defendant's default is that Plaintiff notified Defendant of infringement on January 4, 2022, and that Defendant responded by removing the photo on January 14, 2022. [See doc. 1 at 3–4]. Plaintiff entirely fails to articulate what other "post-notification conduct" of Defendant the Court should take as establishing its state of mind and fails to provide any analysis linking specific facts admitted by Defendant to

6

Plaintiff's legal conclusions.[2] As such, this factor weighs in favor of a lower award of damages.

Under the second factor, Plaintiff admits it has no evidence of profits earned by Defendant based on its infringement and contends only that Defendant saved $2,500 in expenses by failing to pay the licensing fee Plaintiff would have charged for use of its photo. [Doc. 8-1 at 7]. However, Plaintiff has neither alleged nor presented any evidence to support the reasonableness of the $2,500 licensing fee he alleges he would have charged and as such, this Court has no basis on which to find that Defendant saved such expense. Specifically, Plaintiff presents no evidence of the past licensing fees he has received for his works, much less the licensing fees he has received for the photo at issue. Therefore, this factor weighs in favor of a lower award of statutory damages.

Under the third factor, revenue lost by the copyright holder, Plaintiff contends that he lost $12,500 because of Defendant's infringement. [Doc. 8-1 at 7]. He based this calculation "on both the lost licensing fees and the loss of [his] right to issue an exclusive license to use the [w]ork in the future." [Id.]. In his declaration, Plaintiff contends that he would have

---

[2] To the extent that Plaintiff's argument regarding Defendant's post-notification conduct under the first Bryant factor is another iteration of his argument that this Court should infer Defendant's infringement was willful solely by virtue of its default, this Court rejects that argument, as explained below.

ordinarily charged a licensing fee of $2,500 for the photograph at issue, which explains $2,500 of Plaintiff's claimed revenue loss. [See doc. 8-2 at 4]. Plaintiff advances multiple explanations for the additional $10,000 in losses he claims. Specifically, in his Declaration, and again in his Memorandum in Support of Motion for Default Judgment, Plaintiff states that the $12,500 in damages was computed by multiplying the $2,500 from the lost licensing fee by a "scarcity multiplier" of five. [Doc. 8-1 at 8; Doc. 8-2 at 4]. Yet, in his Memorandum, he also appears to contend that this additional $10,000 loss is supported by the loss of his opportunity to grant an exclusive license in the photo. [See doc. 8-1 at 7; Doc. 8-2 at 4].

As a primary matter, in his Complaint, Plaintiff has alleged no facts from which the Court could find the reasonableness of a $2,500 licensing fee for its use of his photo. Therefore, the Defendant admitted no such facts by way of its default. Additionally, even had Plaintiff so alleged, "[u]pon default, the well-plead allegations in a complaint as to liability are taken as true, . . . the allegations as to damages are not." S.E.C. v. Lawbaugh, 359 F. Supp. 2d 418, 422 (D. Md. 2005). As such, for the Court to conclude Plaintiff lost $2,500 in revenue, it would need evidence supporting this contention. Here, Plaintiff provides none.

Specifically, Plaintiff presents this Court with no evidence on which the Court could find that Defendant would have been willing to pay $2,500 to license his photo. Plaintiff also presents no evidence showing what licensing fees he has received for this work or any of his works. Without such evidence, the Court is left to guess as to what someone might be willing to pay to license Plaintiff's work. Underscoring this lack of evidence, Plaintiff copyrighted the photo at issue in 2005, yet he submits no evidence illustrating that anyone has ever sought to license the photo at all, much less what he was paid for such license. As such, Plaintiff's claim that he lost $2,500 in revenue based on Defendant's infringement is entirely speculative.

As for Plaintiff's argument that this Court should apply a "scarcity multiplier" to his claimed damages, Plaintiff cites no Fourth Circuit authority supporting such application. The Court cannot conclude that application of such a multiplier is appropriate in this case. Indeed, the only case within the Fourth Circuit that addresses such a multiplier in the context of a copyright default judgment is <u>Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.</u>, No. SAG-18-03403, 2021 WL 5359671 (D. Md. Nov. 17, 2021). There, the court declined to let an expert witness testify as to the scarcity of a photograph because the expert's "subjective belief" fell short of

the standard articulated in Daubert. Id. at *7–*8 (citing Daubert v. Merrell Dow Pharma., 509 U.S. 579, 590 (1993)).

Here, Plaintiff contends that a multiplier is appropriate because "[t]he [w]ork is scarce [and] its creation required specific environmental conditions and advanced, unique photography techniques[.]" [Doc. 8-1 at 8]. However, he fails to support such conclusory statement with any evidence of what rare environmental conditions were required and how the techniques he used in capturing the photo are unique. Therefore, even if application of a scarcity multiplier were supported by precedent, based on the reasoning from Brittney Gobble Photography Plaintiff's self-interested statement of his subjective belief as to the scarcity of his photo is insufficient to justify application of a scarcity multiplier.[3]

The courts that have applied a scarcity multiplier have done so "to compensate for a work's loss in value based on the decreased likelihood that potential buyers will purchase a work that has been displayed

---

[3] Plaintiff also argues that a multiplier is "particularly appropriate in this case because Defendant not only copied the [w]ork but disseminated it on the internet, making it publicly available to an infinite number of people." [Doc. 8-1 at 9]. However, Plaintiff provides no citations in support of this position, nor does he explain why the publication of the photograph on the internet is particularly egregious. Additionally, it must be noted that Plaintiff alleges Defendant initially obtained the photo at issue from the internet, suggesting that Defendant was not the first party to disseminate the photo on the internet, or to make it publicly available. [Doc. 1 at 4]. This Court also notes that Plaintiff himself disseminates his photographs, including hundreds of photos of waves, on the internet. These facts strongly undercut Plaintiff's argument that publication of the photo on the internet itself would justify a scarcity multiplier, or even that the photo is indeed scarce.

10

commonly and widely . . . [.]" Bowers v. David Jacobs-Publ'g Grp., LLC, No. 8:19-cv-1361-T-35TGW, 2019 WL 8989845, at *3 (M.D. Fla. Oct. 31, 2019). This requires proof that a work is scarce, and that there is some demand for the work among potential buyers. See Reiffer v. Shearwater Pac. Cap. Mgmt. LLC, No. 18-cv-06053-JSW (RMI), 2020 WL 7048307, at *6–*7 (N.D. Cal. May 13, 2020) (declining to apply a scarcity multiplier where the photo at issue was of an accessible landmark that could be "re-caputre[d]" and where there was no evidence that anyone had sought to license the photo); see also Reiffer v. Legendary Journeys, Inc., No. 8:17-cv-2748-T-35AAS, 2019 WL 2029973, at *3 (M.D. Fla. Apr. 10, 2019) (applying a scarcity multiplier (1) because the photograph at issue could not be recreated because the building from which it was taken, and thus the vantage point, had been demolished and (2) because Disney had sought to license the photograph). Here, Plaintiff provides the Court with no evidence establishing the demand for his work generally, or for the photo at issue. In fact, Plaintiff undercuts his scarcity argument with the evidence of the sheer number of photographs of waves Plaintiff himself has made available. Plaintiff simply has not demonstrated that application of a scarcity multiplier is appropriate.

Plaintiff's argument that he lost the opportunity to "offer an exclusive license to use the work . . .," [Doc 8-2 at 4; see also, Doc. 8-1 at 7], likewise suffers from a lack of support. Such does not flow from the simple fact of infringement. There is nothing in the record to support the contention that the work is one for which an exclusive license might be sought, or that Defendant's past infringement would preclude such an arrangement if the opportunity presented itself. As Plaintiff has failed to provide the Court with any evidence proving the extent of his lost revenue, this factor weighs in favor of a lower award of damages.

Plaintiff has offered no argument as to how the fourth Bryant factor, which recognizes the need to deter infringers, should weigh in this case. This Court recognizes that "[s]tatutory damages are intended not merely for the restitution of profit or reparation of injury, but to deter wrongful conduct." Graduate Mgmt. Admission Council v. Raju, 267 F. Supp. 2d 505, 511 (E.D. Va. 2003). However, this Court has also previously found that the minimum statutory award of $750 can be sufficient, based on the facts of a given case, to "deter future copyright infringement." See Oppenheimer v. Griffin, No. 1:18-cv-002720-MR-WCM, 2019 WL 7373784, at *7 (W.D.N.C. Dec. 31, 2019). Plaintiff presents nothing regarding the Defendant to show that a higher statutory award would be needed to deter it from such

infringement.  While a $750 sanction might not deter (or even be noticed by) Disney, it would serve to get the attention of a small business.  In addition, allowing for the award of attorneys fees has an additional deterrent effect.  Absent any evidence or specific argument by Plaintiff to support the need for increased damages to serve a deterring effect, the Court concludes that this factor neither weighs in favor nor against an increased award of damages.

Plaintiff argues under the fifth factor, which assesses the infringer's cooperation in providing evidence concerning the value of the infringing material, that Defendant has not cooperated at all in this case because it has not participated in litigation.  [Doc. 8-1 at 8].  This Court has previously recognized that "the fact that [a] Defendant d[oes] not respond to the Summons in [a] case may [be] relevant to the fifth factor . . . [.]"  See Oppenheimer, 2015 WL 2062189, at *2.  Here, specifically, Defendant's lack of participation has hampered Plaintiff's ability to provide the Court with certain evidence that might be relevant to the first and second factors, the infringer's state of mind and the expenses saved by the infringer, respectively.  However, the Court notes that Defendant did cooperate with Plaintiff in removing the infringing photo from its website, doing so only ten days after Plaintiff notified it of infringement.  As such, this Court concludes

that this factor neither weighs in favor nor against an increased award of damages.

Under the sixth factor, which considers the conduct and attitude of the parties, Plaintiff alleges Defendant downloaded the photo from the internet, uploaded it to its website for advertising purposes[4] without Plaintiff's knowledge or consent, displayed it from May 12, 2020, until January 14, 2022, and removed the photo from its website ten days after being notified by Plaintiff of the infringement. [Doc. 1 at 3–4]. As noted above, these allegations are sufficient to state a claim for copyright infringement. However, Plaintiff does little to explain how these admitted facts impact the weighing of the sixth factor. Rather, Plaintiff states in conclusory fashion that "the infringer's conduct . . . weigh[s] in favor of granting [Plaintiff] a significant award of statutory damages." [Doc. 8-1 at 8]. But the only support Plaintiff provides for this contention is Defendant's failure to participate in this action, which has been accounted for above, and Defendant's failure to "resolve this matter without resorting to litigation[.]" [Id.]. As such, this factor weighs in favor of a lower award of damages.

---

[4] Defendant's name might imply that it is a not-for-profit corporation. There is no evidence before the Court as to whether it is. The Plaintiff made the factual allegation in his Complaint that Defendant's infringement was "for the purpose of advertising and promoting its business activities." [Doc. 1 at 4]. As such, this is admitted by virtue of Defendant's default.

14

Plaintiff has the burden of proof regarding damages. In light of the statutory damages provision, the Plaintiff is not tasked with proving the amount of his actual damages. But he nonetheless has the burden of convincing the Court of an appropriate award within the statutory range between $750 and $30,000. As detailed above, the Court cannot conclude that even one of the Bryant factors favors an increased award. As such, utilizing its wide range of discretion in assessing statutory damages, the Court will award Plaintiff $750 in statutory damages. See F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 231–32 (1952).

In his Memorandum in Support of his Motion for Default Judgment [Doc. 8-1], Plaintiff further contends he is entitled to additional damages because Defendant's infringement of his copyright was willful. [Id. at 9]. Where the infringement is willful the Court "may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). "Infringement is willful for enhanced statutory damages purposes 'when a defendant acted with actual or constructive knowledge that his actions constituted infringement or recklessly disregarded a copyright holder's rights.'" UMG Recs., Inc. v. Kurbanov, No. 1:18-cv-957, 2021 WL 6492907, at *8 (E.D. Va. Dec. 16, 2021) (citing Tattoo Art, Inc. v. TAT Int'l, LLC, 794 F. Supp. 2d 634, 649 (E.D. Va. 2011)).

15

Plaintiff contends that the Court should infer that Defendant's infringement was willful simply by virtue of its default. [Doc. 8-1 at 6]. Plaintiff, however, provides no authority for such a proposition, and the support for such within this Circuit is very thin. See Wilson v. Nat'l Bikers Roundup, Inc., No. 3:15-4862-MGL-SVH, 2018 WL 3120668, at *5 (D.S.C. Feb. 26, 2018) ("A court may infer that a defendant's infringement is willful from the defendant's failure to defend.") (citing Tiffany, Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003)); but see Malibu Media, LLC v. Doe, No. GJH-18-2162, 2020 WL 2395607, at *4 (D. Md. May 11, 2020) (noting that "upon default, Defendant is only deemed to have admitted the factual allegations against him; 'he is not deemed to have accepted [Plaintiff]'s legal argument as to willfulness.'" "[O]n the available evidence, the extent and nature of [Defendant]'s willfulness cannot be known."); Kurbanov, 2021 WL 6492907, at *9 (citing evidence in plaintiff's complaint that supports a finding of willfulness, rather than simply inferring); Spencer v. Yellowcabservices.com, No. 1:20-cv-368, 2020 WL 13200117, at *5 (E.D. Va. Nov. 19, 2020) (same); Malibu Media, LLC v. Doe, No. 1:19-cv-519, 2019 WL 7476684, at *4 (E.D. Va. Dec. 9, 2019) (same); Strike 3 Holdings, LLC v. Doe, No. 1:21-cv-1140, 2022 WL 3337797, at *5 (E.D. Va. 2022) (same).

By its default, a defendant admits only a plaintiff's well-pleaded factual allegations—he does not admit conclusions of law, such as what constitutes willfulness. Ryan, 253 F.3d at 780 (citing Thomson v. Wooster, 114 U.S. 104, 113 (1885)). It is the burden of the Plaintiff to present something to the Court – either evidence or specific factual allegations of willfulness that are admitted by default – in order for the Court to have a basis on which to find willfullness. Plaintiff has failed to meet this burden. Therefore, the Court does not find Defendant's infringement to have been willful.[5]

## C. Injunctive Relief

Plaintiff also seeks an injunction "permanently enjoining Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities from further infringement of all copyrighted works of . . . Plaintiff pursuant to 17 U.S.C. § 502[.]" [Doc. 1 at 6].

---

[5] Further, as Plaintiff notes in his Complaint, Defendant was only asked to remove the copyrighted photo from its website on January 4, 2022, and it did so by January 14, 2022. [Doc. 1 at 3–4]. This weighs against a finding of willfulness, as Plaintiff offers no evidence that Defendant actually, or constructively, knew its use of the photo violated Plaintiff's copyright prior to notification, and Defendant quickly removed the photograph from its website when asked to do so.

17

Under 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  As such, the Court will enter a permanent injunction enjoining Defendant from further infringement of Plaintiff's copyright.

### D. Attorneys' Fees and Costs

"[T]he Copyright Act gives the Court discretion to award reasonable attorneys' fees and costs to the prevailing party."  Oppenheimer, 2015 WL 2062189, at *3 (citing 17 U.S.C. § 505).

Plaintiff alleges that his attorney spent 7.5 hours on this case at a rate of $350 per hour, for a total request of $2,625 in attorneys' fees.  In light of the time and expenses associated with prosecuting an action for entry of a default judgment, as well as the evidence submitted by Plaintiff establishing his attorney's hourly rate as reasonable, this Court finds Plaintiff's request reasonable and therefore awards Plaintiff $2,625 in attorneys' fees. Plaintiff also claims he incurred costs totaling $419.95.  [Doc. 8-1 at 11]. This amount represents the filing fee of $402 in this matter, "and $17.95 in Federal Express charges for service of the summons and complaint."  [Id.].

18

Case 1:22-cv-00230-MR    Document 9    Filed 09/25/23    Page 18 of 20

The Court finds these costs to have been reasonably incurred and therefore awards Plaintiff $419.95 in costs.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's Motion for Default Judgment Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure. [Doc. 8].

**IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion for Default Judgment Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure [Doc. 8] is **GRANTED**, and a Default Judgment is entered against Defendant as follows:

(1) Plaintiff shall have and recover from Defendant:

   a. statutory damages in the amount of $750;

   b. attorneys' fees in the amount of $2,625; and

   c. costs in the amount of $419.95.

(2) A permanent injunction is hereby entered against the Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with the Defendant, prohibiting them from (a) directly or indirectly infringing Mark A. Johnson's copyright or continuing to market, offer, sell, dispose of, license, lease, transfer,

19

Case 1:22-cv-00230-MR    Document 9    Filed 09/25/23    Page 19 of 20

publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from any copyrighted work of the Plaintiff or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted work.

**IT IS SO ORDERED.**

Signed: September 23, 2023

Martin Reidinger
Chief United States District Judge